**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| FREEDOM MORTGAGE CORP. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| PAUL BENSON AND KRISTY BENSON | : | |
| | : | |
| APPEAL OF:  PAUL BENSON | : | No. 1510 EDA 2025 |

Appeal from the Judgment Entered August 15, 2025
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  230402912

BEFORE:  PANELLA, P.J.E., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED JULY 9, 2026**

Paul Benson appeals, *pro se*, from the judgment of foreclosure entered against a residential property at 1221 Titan Street in Philadelphia.  We affirm.

In December 2017, Mr. Benson and Kristy Benson (his wife) mortgaged the property to Allied Mortgage Group based on a $330,000 promissory note. The mortgage and note passed through various entities[1] to Freedom Mortgage Corp. ("FMC").  Thereafter, the Bensons stopped making mortgage payments.

On April 27, 2023, FMC filed this action to foreclose.  There were no preliminary objections.  Mr. Benson filed an answer and new matter, wherein he claimed FMC lacked standing to sue.  *See* Answer and New Matter at 1. Mr. Benson purported to file the Answer and New Matter for himself and on behalf of Mrs. Benson.  Importantly though, Mr. Benson is not an attorney.

---

[1] The other entities included Mortgage Electronic Registration Systems, Inc. ("MERS"); PennyMac Loan Services LLC; Plaza Mortgages, Inc; and Arc Home LLC.

**See** N.T., 2/18/25, at 5. Thus, Mrs. Benson did not file any documents of record in this case.[2]

The matter proceeded to a non-jury trial on February 18, 2025. Allison Bielby, an employee of FMC, testified to the above facts. At the close of FMC's case-in-chief, Mr. Benson handed the court a "Motion to Dismiss" that included exhibits. **See** N.T., 2/18/25, at 26.

Counsel for FMC responded:

> Mr. and Mrs. Benson filed an answer without preliminary objections. The court rules are very clear that, if a Motion to Dismiss is filed, it needs to be raised by preliminary objections prior to the pleading in the action. So, in this case, by filing an answer without filing preliminary objections, the Bensons have waived that.

**Id.** at 26-27.

The trial court denied the motion to dismiss. **See id.** It then asked Mr. Benson "a very frank question: have you paid any mortgage [payments] since December of 2022?" **Id.** at 28.

He said, "No." **Id.** In his view, he "paused" the mortgage payments, "because [FMC] wouldn't give [him] the information that [he] was requesting."

---

[2] Because Mr. Benson is not an attorney, all of his filings were legal nullities regarding his purported representation of Mrs. Benson. "[N]on-attorneys may not represent other parties before Pennsylvania courts. Further, the unauthorized practice of law is prohibited and criminalized in Pennsylvania." **Delaware Valley Landscape Stone, Inc. v. RRQ, LLC**, 284 A.3d 459, 462 (Pa. Super. 2022) (citing 42 Pa.C.S.A. § 2524(a)) (some citations omitted). Hence, Mr. Benson's repeated representation of his wife and his filings on her behalf were legally nullities. **See id.**

*Id.* at 30. Mr. Benson argued, "Under the UCC[, the Uniform Commercial Code,[3]] it's okay to pause your payments if you -- if you're not getting the information that you need to verify the loan." *Id.*

The court gave Mr. Benson until February 21, 2025 to file a post-trial brief regarding his UCC defense. *See id.* at 31. The court also admitted Mr. Benson's exhibits into evidence and directed him to brief "how [his exhibits] pertain to the documents that you sent me and the actions that you claim that [FMC] has made that you believe are fraudulent." *Id.* at 32. The court also gave FMC a week to provide a responsive, post-trial brief, following the filing of Mr. Benson's post-trial brief. The court adjourned.

Instead of filing a post-trial brief as ordered, on February 24, 2025, Mr. Benson filed a document titled "Motion to Dismiss with Prejudice," in which he renewed his claim that FMC lacked standing. He relied on Pennsylvania Rule of Civil Procedure 1028 and seemingly attempted to file preliminary objections to FMC's standing. Mr. Benson asserted that FMC lacked standing to sue and that FMC failed to join an indispensable party. His preliminary objections did not identify the allegedly indispensable party.

Four days later, FMC filed a post-trial brief, proposed findings of fact, and proposed conclusions of law.

On March 4, 2025, Mr. Benson filed a document titled "Defendant's Joinder Counterclaim." In this new filing, he raised post-trial counterclaims

---

[3] *See* 13 Pa.C.S.A. §§ 1101—91136.

against Allied Mortgage, PennyMac, and MERS (collectively "the Non-Parties"). Mr. Benson neglected to have the Sheriff of Philadelphia County serve the "Defendant's Joinder Counterclaim" on the Non-Parties.[4] Hence, they were never summoned into court or joined to this action. Nevertheless, Mr. Benson also directed his post-trial counterclaims against FMC.

The following day, FMC filed preliminary objections to Mr. Benson's counterclaims. FMC argued that the "Joinder Counterclaims" were facially untimely, because Mr. Benson filed them after the trial. FMC argued that Mr. Benson had waived his right to bring counterclaims by not including them in his answer and new matter, during the pleadings stage of the case. It also contended that the Rules of Civil Procedure limit counterclaims in foreclosure actions to those that arise from the transaction, specifically, counterclaims relating to the creation of the mortgage.

On March 31, 2025, the trial court denied Mr. Benson's "Motion to Dismiss with Prejudice." On April 2, 2025, Mr. Benson filed a "Motion for Clarification." The trial court denied his motion the next day.

On April 10, 2025, the trial court sustained FMC's preliminary objections to Mr. Bensons' "Joinder Counterclaim." He moved for reconsideration, which the trial court denied.

On May 1, 2025, Mr. Benson moved for leave of court to join additional defendants. He also moved for certification of the April 10, 2025 Order,

---

[4] In Pennsylvania, "original process shall be served . . . only by the sheriff." Pa.R.Civ.P. 400(a).

sustaining FMC's preliminary objections to his counterclaims, as a final order. The trial court denied that motion, as well.

On May 19, 2025, the court entered its non-jury decision from the February 18, 2025 trial. It found in favor of FMC for $331,623.70. The trial court also ordered the judicial sale of the property to satisfy the unpaid balance on the Bensons' loan.

On May 23, 2025, Mr. Benson filed a Motion to Strike Final Order of May 19, 2025. He contended that the trial court violated Pennsylvania Rule of Civil Procedure 1038(b), because it did not issue findings of fact and conclusions of law with its non-jury decision. **See** Motion to Strike at 3. In addition, Mr. Benson argued that the trial court's entry of the non-jury decision violated his due process rights, because the court had not ruled on his motion for leave to join Selene Financial as an additional defendant.

Next, on May 28, 2025, Mr. Benson filed a two-page motion to reconsider the May 19, 2025 Order. Therein, he claimed that (1) there was a fraud upon the court due to "a fabricated allonge (Ex. L) not affixed to the Note, voiding [FMC's] standing," (2) Mr. Benson had after-discovered evidence that "Selene Financial serviced the loan without a PA license," and (3) the trial court ignored "**Bank of America v. Gibson**, 259 A.3d 520 (Pa. Super. 2021) ([holding] fabricated documents void judgment [of foreclosure])." Benson's May 28, 2025 Motion for Reconsideration at 1-2.

Notably, Mr. Benson filed no post-trial motions. Even so, the trial court liberally construed Mr. Benson's Motion to Strike the May 19, 2025 non-jury

- 5 -

decision and his May 28, 2025 Motion for Reconsideration as if they were timely filed motions for post-trial relief. Two weeks later, the trial court denied reconsideration of its non-jury decision. The next day, Mr. Benson filed a notice of appeal to this Court, purportedly from the May 19, 2025 Order announcing the non-jury decision.

On June 25, 2025, the trial court entered orders that (1) denied the Motion to Strike its May 19, 2025 Order; (2) denied a separate motion by Mr. Benson for sanctions; and (3) directed him to file a Rule 1925(b) Statement of Errors Complained of on Appeal. The latter order warned Mr. Benson that "any issue not properly included in the Statement timely filed and served pursuant to subdivision (b) of the Rule **shall be deemed waived**." T.C.O., 6/25/25 #3, at 1 (emphasis added).

Mr. Benson filed a 1925(b) statement raising eight issues and 27 sub-issues. His voluminous statement of errors was as follows:

**I. Error in Granting Judgment Despite Lack of Standing**

The trial court erred in entering judgment for [FMC] where:

(a) Defective Allongé: [FMC's] allongé (Exhibit L) was unattached to the Note, violating 13 Pa.C.S.A. § 3204(a) (UCC § 3-204(a)) requiring an allongé to be "affixed" to the instrument. (**Deutsche Bank v. Berkery**, 130 A.3d 782 (Pa. Super. 2015)).

(b) Unlicensed Servicing: Selene Financial serviced the loan (July–Sept. 2018) without a Pennsylvania license (7 Pa.C.S.A. § 6101), violating 41 P.S. § 101 *et seq.* (Act 6) and 7 Pa.C.S.A. § 6101, voiding assignments under (**Freedom Mortg. Corp. v. Cooper**, 279 A.3d 1252 (Pa. Super. 2022)).

(c)     Fabricated Documents:    [FMC] falsified the March 2022 Assignment and trial accounting (Exhibits C, X) to conceal Selene's role and licensing violations.

(d)     Mortgage Accord & Satisfaction / Voided Transfer by Allongé Restriction:    The Mortgage contained a "conspicuous statement" compliant with UCC § 3-311 and 13 Pa.C.S.A. § 3311, constituting accord and satisfaction of the Note upon tender.    Alternatively, the "conspicuous statement" explicitly prohibited transfer of the security instrument via allongé.    Any attempted transfer by allongé voided the mortgage contract.

## II.  Error in Failing to Join Indispensable Parties

The trial court erred by refusing to join:

(a)     BSI Financial:    Holder of a subordinate mortgage affecting title.

(b)     Secretary of Veterans Affairs (VA):  Guarantor of the loan and subsequent owner/party in interest violating Department of Veterans Affairs mandates similar to the recently rescinded by executive order, VASP Program.

(c)     Allied Mortgage, Pennymac Mortgage, Selene Finance and MERSCORP:  Joinder Counterclaim Parties whose actions demonstrate systemic fraudulent occurrences in a series of transaction all connected through a single property and continuity of negotiable security instruments.    All claims are supported by factual evidence.

(d)     Allied Mortgage, AmeriHome Mortgage, Cenlar FSB, MERSCORP, Wells Fargo N.A. and Freddie Mac:  Failed to take judicial notice or investigate upon [FMC's] request contained in Joinder Counterclaim.  These are potential Joinder Parties from Appellant's parallel litigation (CASE#:240100380 moved to federal court at #2:24-cv-03467-JDW soon set for remand) that contains the exact same questions of law, exact same MLA violations, exact same MERS falsified documents and the exact same cause of damages.  There is also

potential class action certification for PA Mortgage Licensing Act violations being erroneously overlooked.

### III. Error in Failing to Address Due Process Violations

The trial court erred by denying Appellants' right to Due Process in the following:

(a)   Denying Discovery:  Failure to respond to discovery requests (May 9, 2023, and January 3, 2024) for authenticated accountings, MERS records, and contracts.  Leading to concealment of Selene Financial's servicing role and licensing defects. The court denied assistance and emergency relief requests.

(b)   Dismissing, Denying or Ignoring ALL Motions presented by Appellant:  Unexplained dismissal and denial of all motions receiving a judicial order.

(c)   Judgment Unexplained:  There was no explanation as to the judgment handed down on May 19, 2025. Including no accounting for the amount which was inconsistent with claim or how judge arrived at the decision.

(d)   Dismissal with Prejudice:  Dismissal of Joinder Counterclaim with prejudice attempted to preempted adjudication on the merits of the claims and evaluation of the evidence and prevent any proper adjudication ever.

### IV. Error in Failing to Address Equal Protection Violations

The trial court erred by disregarding evidence that:

(a)   VA-specific programs, Loan Guaranty/Subordinate Mortgage (VASP adjacent VA Mortgage ownership) terminated relief options available to non-veterans. VASP terminated by executive ordered as "VA Home Ownership" beyond the Department of Veterans Affairs mandate.

(b)   [FMC's] "partial claim" mortgage blocked access to PAHAF funds.

## V. Error in Dismissing Counterclaims with Prejudice

The trial court erred by dismissing Appellants' counterclaims (fraud, rescission, UCC violations, PA Statute violations) as "procedurally improper" despite:

(a)    Their compulsory nature under Pa.R.C.P. 1031(a) (**Burch v. Sears**, 467 A.2d 615 (Pa. Super. 1983)).

(b)    Evidence of falsified documents (Exhibits O, S) and PA Consumer Protection/MLA violations.

(c)    No procedural defect:  There is no time restriction on filing Counterclaims or Joinder Requests.

(d)    The trial court requesting the counterclaim be written up and allowances for time extension of submission by way of email conversations with chambers. (Supplemented to the Record.) These requests and allowances defeat any procedural defect.

## VI. Error in Admitting Fraudulent Evidence:  (Fraud on the Court)

The trial court erred by admitting:

(a)    By Reference:  The un-affixed allongé (Exhibit L) and backdated assignments by reference from joinder party, MERS.

(b)    Directly to the Record:  Allowing a falsified allongé sequence with impossible pagination on the record from joinder party, MERS.

(c)    At Trial:  [FMC's] accounting records (Exhibit X), which attributed Selene's transactions to Flagstar, submitted at trial.  Also including a bait-n-switch scheme of the Note at trial by opposing counsel once the defect of impossible pagination was demonstrated.  **See** transcripts throughout where opposing counsel asserts continually that the defaced Note (one with newly obtained note-taking markings obscuring the original fastener markings) presented at trial, is the original Note.  Sanctions must be considered.

**VII. Error in Overlooking Rescission Rights**

The trial court erred by ignoring Appellants' rescission of the:

(a)   2016 PennyMac refinance (Exhibit H), voiding subsequent instruments.

(b)   2022 Subordinate Mortgage (Exhibit U), which lacked required TILA disclosures (specifically, Notice of Right to Cancel), entitling Appellant to rescind under 15 U.S.C. § 1635(f).

**VIII. Error in Failing to Address Violations of Pennsylvania Satisfaction Of Mortgage Law**

The trial court erred by ignoring Appellee's statutory violations under 21 P.S. § 682, (all refinances of the same mortgage - series of transactions) where:

(a)   Untimely Recording:   Joinder party, PennyMac Mortgage, recorded the satisfaction piece 49-50 days after payoff and written demand (Exhibit I), violating 21 P.S. § 682(1) (requiring recording within 45 days of written request and full payment) thus incurring mandatory fines under § 682(2).

(b)   Prejudicial Delay: Joinder party, PennyMac Mortgage, fraudulently induced [Mr. Benson] into agreement and strategically delayed the recording during Appellants' family medical crisis (disabling childbirth complications requiring infant harness therapy and maternal pelvic dislocation), intentionally circumventing [Mr. Benson's] scrutiny.

(c)   MERS' Invalid Action:   Satisfaction was improperly executed by MERS - which admits it "cannot transfer beneficial rights to the debt" (MERS Manual) - voiding the instrument and leaving the security interest in circulation. Security interest never left the relevant Trust.

(d)   Clouded Title:  The defective satisfaction created dual security interests (one located in Trust with the other changing ownership through refinance), diminishing property value and creating litigation risk through broken chain of title.

Benson's 1925(b) Statement at 2-7 (some capitalization removed).

The trial court issued a 61-page opinion addressing all of Mr. Benson's claims of error. The court correctly explained that he had waived many of the above issues by failing to raise them prior to or during the non-jury trial.[5]

After reading the trial court's detailed, thoughtful, and well-reasoned 1925(a) Opinion, Mr. Benson raises several new issues in this Court that did not appear in his 1925(b) Statement. He asserts the following claims of error:

1. Does a mortgage entity's material noncompliance with the licensing requirements of the Pennsylvania Mortgage Licensing Act, 7 Pa.C.S.A. § 6101 *et seq.*, create an implied private right of action for borrowers, providing either (1) a claim for damages for borrowers who sustain an injury in fact, or (2) a defense to the enforcement of a mortgage loan, even in the absence of a separate claim for damages?

2. Whether the trial court committed reversible error by applying the wrong legal standard to dismiss compulsory counterclaims and joinder efforts with prejudice.

3. Did issuing a procedurally void and unsubstantiated "directed verdict" in a manner that violated due process create an appearance of impropriety?

4. Did the cumulative impropriety and appearance of partiality deprive Mr. Benson of a fair proceeding?

5. Did the trial court err in finding FMC had standing?

6. Did the trial court abuse its discretion by employing waiver doctrines to preclude a *pro se* litigant's substantive claims of fraud and statutory violations,

_____

[5] ***See*** Pa.R.A.P. 302(a).

rather than addressing the claims on their merits in the interest of justice?

7. Did the trial court err in finding evidence of Selene Finance's unlicensed servicing was not "after-discovered" when it was revealed for the first time in a falsified accounting produced at trial, after appellee obstructed all discovery requests?

8. Did the trial court violate [Mr. Benson's] due process rights by failing to rule on pending motions, issuing orders without explanation, and conducting an irregular post-trial procedure culminating in a *sua sponte* "directed verdict" months after the trial concluded?

9. Did the cumulative effect of procedural irregularities and the involvement of Judge Roberts in the August 15, 2025 Order, following his pattern of adverse rulings in this and the related **Benson v. AmeriHome** case, create an appearance of impropriety requiring reversal?

10. Did the trial court err and abuse its discretion by refusing to apply the doctrine of unclean hands to bar FMC's foreclosure action?

Benson's Brief at 2-5 (cleaned up). We begin our review with issues numbered 1, 2, 3, 4, 6, 7, 9, and 10 in Mr. Benson's Statement of Questions Involved. None of those issues are in his 1925(b) statement, which implicates waiver.

"The issue of waiver presents a question of law, and, as such, our standard of review is *de novo*, and our scope of review is plenary." **Trigg v. Children's Hospital of Pittsburgh of UPMC**, 229 A.3d 260, 269 (Pa. 2020).

Pennsylvania Rule of Appellate Procedure 1925(b) is very clear and very strict. "The Statement shall set forth **only** those errors that the appellant intends to assert." Pa.R.A.P. 1925(b)(4)(i) (emphasis added). "Issues not

included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived." Pa.R.A.P. 1925(b)(4)(vii).

The Supreme Court of Pennsylvania has made clear that an appellant's compliance with Rule 1925(b) is mandatory. In order "to preserve their claims for appellate review, appellants must comply whenever the trial court orders them to file a Statement of [Errors] Complained of on Appeal pursuant to Rule 1925. Any issues not raised in a 1925(b) statement will be deemed waived." ***Commonwealth v. Lord***, 719 A.2d 306, 309 (Pa. 1998).

Mr. Benson's 1925(b) statement raised a host of issues and sub-issues. He inundated the trial court with far more claims of error than the number of legal arguments he had presented to that court during the case. The trial court explained to Mr. Benson that many of his issues were not preserved for appellate review, and the court then graciously proceeded to address the merits of his asserted errors anyway.

Now, Mr. Benson flouts Rule 1925(b) by raising new claims of error. Rule of Appellate Procedure 1925(b)(4)(vii) prohibits this type of appellate-issue-shell game. By raising new issues that do not appear in his 1925(b) statement, Mr. Benson deprived the trial court of the opportunity to address most of his appellate issues in its 1925(a) Opinion. "The absence of a trial court opinion" on the issues that Mr. Benson raises "poses a substantial impediment to meaningful and effective appellate review." ***Commonwealth v. McBride***, 957 A.2d 752, 758 (Pa. Super. 2008).

Mr. Benson has frustrated our ability to conduct a meaningful appellate review of those issues. We have no way of knowing the trial court's rationale regarding issues numbered 1, 2, 3, 4, 6, 7, 9, and 10 in Mr. Benson's appellate brief. Under Rule 1925(b), we may not and will not review them.

We dismiss those issues as waived. **See Lord**, **supra**.

Turning to Mr. Benson's fifth issue, he challenges FMC's standing. Mr. Bensons offers a string of sub-issues as to why he believes FMC improperly brought this action for mortgage foreclosure. **See** Benson's Brief at 36-44.

Critically, Mr. Benson failed to raise the issue of FMC's standing in either of his two filings that the trial court deemed to be his motions for post-trial relief. **See** Benson's May 23, 2025 Motion to Strike **and** Benson's May 28, 2025 Motion for Reconsideration. Neither motion renewed the challenge to FMC's standing. Mr. Benson's failure to contest FMC's standing in a post-trial motion implicates waiver.

Under Pennsylvania Rule of Civil Procedure 227.1, "post-trial relief may **not** be granted unless the grounds therefor . . . are specified in the motion." Pa.R.Civ.P. 227.1(b)(2) (emphasis added). "Subdivision (b)(2) specifies the requisites of the motion for post-trial relief. It must state the specific grounds for the relief sought and 'how the grounds were asserted in pre-trial proceedings or at trial.'" **Id.** Comment. "In requiring the motion to state the specific grounds therefor, motions which set forth mere 'boilerplate' language are specifically disapproved. A post-trial motion **must set forth** the theories

in support thereof 'so that the lower court will know what it is being asked to decide.'" *Id.* (emphasis added).

Based on the plain language of Pa.R.Civ.P. 227.1(b)(2) and the Supreme Court's Explanatory Comment, the High Court has long held, "Pa.R.Civ.P. 227.1 requires parties to file post-trial motions in order to preserve issues for appeal. *If an issue has not been raised in a post-trial motion, it is waived for appeal purposes*." *L.B. Foster Co. v. Lane Enters., Inc.,* 551 Pa. 307, 710 A.2d 55, 55 (1998) (emphasis added).

In this case, Mr. Benson filed no document titled "post-trial motion." Even so, in solicitude of Mr. Benson's *pro se* status, the trial court liberally construed his May 23, 2025 Motion to Strike and his May 28, 2025 Motion for Reconsideration as if they were timely filed motions for post-trial relief.

However, neither of those motions claimed Mr. Benson was entitled to judgment as a matter of law, because, in his view, FMC lacked standing to sue. Because Mr. Benson failed to raise the issue of standing in either of his post-trial motions, he has not preserved that issue for appellate review. Thus, we dismiss his fifth appellate issue as waived. *See L.B. Foster*, *supra*.

Benson's eighth and final appellate issue concerns an August 15, 2025 Order, entered after Mr. Benson appealed. The order was as follows:

> **AND NOW**, this 15th day of August, 2025, following a February 18, 2025, non-jury trial in the above-captioned matter, and the court's denial of motions for post-trial relief,
>
> **IT IS ORDERED AND DECREED**, that the court enters an *in rem* judgment for [FMC], in the amount of $331,635.70, for the mortgage foreclosure of the property

- 15 -

located at 1221 Titan St., Philadelphia, PA, 19147, pursuant to the non-jury trial worksheet and order, attached hereto as exhibit "A," and enters a directed verdict in favor of [FMC] and against [the Bensons] on all counterclaims against [FMC].

**JUDGMENT ENTERED.**

T.C.O., 8/15/25, at 1.

Mr. Benson claims the trial court could not enter a post-trial "directed verdict" on his counterclaims against FMC, even though Mr. Benson filed his counterclaims after the trial was over. **See** Benson's Brief at 56-57. This argument arises from Mr. Benson's fundamental misconception of what the at-issue order accomplished.

The August 15, 2025 Order is simply the trial court's ministerial act of entering a post-appeal judgment on its docket in favor of FMC and against Mr. Benson. Entry of final judgment is a prerequisite to our appellate jurisdiction. **See Johnston the Florist, Inc. v. TEDCO Constr. Corp.,** 657 A.2d 511, 514 (Pa. Super. 1995) (*en banc*). Because Mr. Benson appealed to this Court immediately after the trial court denied his motion for reconsideration, his appeal was, at that point, premature. By entering a final, post-notice-of-appeal judgment in the August 15, 2025 Order, the trial court was perfecting this Court's appellate jurisdiction and relinquishing its original jurisdiction over the case to us.

Nevertheless, we observe that the trial court previously dismissed Mr. Benson's untimely counterclaims when FMC filed preliminary objections to them in April of 2025. Thus, the August 15, 2025 Order's entry of a "directed

verdict" was redundant of April 10, 2025 Order sustaining FMC's preliminary objections.

Because the trial court had already dismissed Mr. Benson's untimely counterclaims upon FMC's preliminary objections, FMC previously received judgment as a matter of law on Mr. Benson's counterclaims. The language of "enters a directed verdict in favor of plaintiff and against defendants on all counterclaims against plaintiff," T.C.O., 8/15/25, at 1, simply restated the result of the trial court's April 10, 2025 Order.

Accordingly, the August 15, 2025 Order, entering judgment in favor of FMC and dismissing the untimely counterclaims as a matter of law, cannot serve as an independent basis for post-notice-of-appeal relief, because it did not change the parties' positions in relation to the at-issue property. As a result, Mr. Benson's final appellate issue is facially meritless.

Additionally, Mr. Benson did not challenge the trial court's April 10, 2025 Order sustaining FMC's preliminary objections to his untimely counterclaims in his two motions for post-trial relief. Therefore, Mr. Benson waived any basis of appellate relief on this issue, as well. ***See*** Pa.R.Civ.P. 227.1, ***supra***.[6]

_____

[6] Based on our disposition, Mr. Benson's application to supplement the record and his emergency applications to stay are dismissed as moot. The motion for leave to file an amended Rule 1925(b) statement *nunc pro tunc* is denied. The motion to invalidate application of Pa.R.C.P. 1019(g) is denied. The motion to declare Pa.R.C.P. 1019(g) unconstitutional is dismissed as waived for failure to raise it below. ***See*** Pa.R.A.P. 302(a).

J-S08028-26

Judgment affirmed.[7]

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/9/2026

---

[7] The application for writ of prohibition shall be severed from this appeal and remains pending as a separate lawsuit.  The order dated May 6, 2026 joining that lawsuit to this appeal is vacated.  The prothonotary is directed to redocket case 78 EDM 2026.